IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01981-MSK-NYW

JAMES RIVER INSURANCE COMPANY,

    Plaintiff,

v.

ATLANTIC BUILDING SYSTEMS, LLC d/b/a ARMSTRONG STEEL CORP.,

    Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Nina Y. Wang

    This matter is before the court on Defendant Atlantic Building Systems, LLC's ("Defendant" or "Armstrong Steel") Motion to Dismiss or in the Alternative Motion to Stay (the "Motion to Dismiss") [#10, filed September 1, 2016],[1] which was referred to this Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), the Order Referring Case dated August 15, 2016 [#6], and the Memorandum dated October 4, 2016 [#14]. Because Defendant seeks to dismiss the action in favor of arbitration and only alternatively, seeks to compel arbitration and stay the matter,[2] this court treats it as a dispositive motion. *See Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1189 (D. Colo. 2013) (reviewing a motion to compel as dispositive,

---

[1] This court uses the convention [#__] to refer to documents filed on the court's Electronic Court Filing ("ECF") system for this action, and the page number assigned by the ECF system. When the court refers to docket entries for other cases before the United States District Court, it refers to the case caption and number, and uses the convention [ECF No. __].

[2] Defendant moves to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure and attaches the insurance policies referred to in Plaintiff's Complaint and Amended Complaint. *See* [#10 at 4; #10-2; #10-3]. Because of this, this court considers the attached policies without converting the Motion to Dismiss to a motion for summary judgment. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

despite the magistrate judge's conclusion otherwise, given the uncertainty as to whether such motions are dispositive). *But see Adetomiwa v. Coll.,* No. 15-CV-01413-PAB-NYW, 2015 WL 9500787, at *1 (D. Colo. Dec. 31, 2015) (citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10 (1st Cir. 2010) (holding that a motion to compel arbitration is non-dispositive because a district court retains jurisdiction to review the arbitration award); *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 133 (3d Cir. 2014) (unpublished) ("A ruling on a motion to compel arbitration does not dispose of the case, or any claim or defense found therein.").

Nevertheless, the same legal standards apply to this instant Motion to Dismiss as would apply to a motion to compel arbitration. Having reviewed the Parties' briefing and the applicable case law, this court finds that oral argument would not materially assist in the Recommendation. Accordingly, for the reasons stated below, this court respectfully RECOMMENDS that Defendant's Motion to Dismiss be GRANTED.

## BACKGROUND

This case arises from an insurance coverage dispute between Plaintiff James River Insurance Company ("Plaintiff" or "James River") and Armstrong Steel. James River issued professional liability policies to Defendant beginning September 22, 2011. [#1 at ¶ 8]. James River then issued renewal number 00050092-4, effective September 22 2015 to May 1, 2016. [#28 at ¶ 8]. James River separately issued renewal number 00050092-5, effective May 1, 2016 to May 1, 2017. [*Id.*]. In procuring policy numbers 00050092-4 and 00040092-5, Armstrong Steel submitted applications for insurance, signed by its CEO Ethan Chumley, representing that no claims had ever been made against it and further representing that it was not aware of any act, error, omission or circumstance which would possibly result in a claim being made against it. [*Id.* at ¶¶ 9-10]. James River contends that contrary to that representation, Armstrong Steel knew

of several lawsuits, but failed to disclose them. [*Id.*]. Specifically, James River asserts that Defendant was aware of, and actively participated in, a lawsuit and arbitration proceeding arising from legal actions taken by Lake Norman Tennis Center, LLC ("Lake Norman proceedings"). [*Id.*]. Armstrong Steel has made a claim for coverage under the James River policies for the Lake Norman proceedings. [*Id.* at ¶ 14].

On September 1, 2016, Armstrong Steel moved to dismiss the action in favor of arbitration. [#10]. Defendant contends that there are arbitration clauses in the two policies at issue that require the Parties to submit to arbitration to resolve this policy coverage dispute. [*Id.*]. Plaintiff disagrees, arguing that the endorsements to the policies contemplate litigation in court, not arbitration. [#13 at 6-7]. James River further contends that even if the arbitration clause is binding on the Parties, it does not require arbitration, but rather is permissive. [*Id.* at 7]. In Reply, Defendant argues that the arbitration clause is mandatory and the Service of Suit endorsements apply only "in the event of the failure of the Company to pay any amount claimed to be due hereunder." [#16 at 5-6]. This court now turns to the interpretation of the relevant policy language.

## LEGAL STANDARDS

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, does not create an independent basis for federal subject matter jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n.32 (1983); *P&P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999). Therefore, this court first preliminarily considers whether there is subject matter jurisdiction for this action. In the Complaint, Plaintiff contends that it is an Ohio corporation and has a principal place of business in Virginia. [#1 at ¶ 1]. It further contends that Armstrong Steel is a limited liability company whose members are not citizens or residents of Ohio or

Virginia and has a principal place of business in Colorado. [*Id.* at ¶ 2]. In the pending Motion to Dismiss, Defendant does not dispute the allegations about its citizenship, nor does it move to dismiss for lack of diversity jurisdiction. [#10]. This court takes judicial notice that in other matters before this court, Armstrong Steel has identified itself as a Delaware corporation with its principal place of business in Colorado. *See* [*General Steel Domestic Sales, LLC v. Chumley*, No. 14-cv-01932-REB-CBS, ECF No. 1 at ¶ 6, 57 at ¶ 6]. Thus, this court is satisfied of its jurisdiction pursuant to diversity of citizenship under 28 U.S.C. § 1332(a)(1).[3]

The law is well established that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citation omitted). Accordingly, this court will apply the long-settled two-step inquiry for whether to enforce an arbitration clause: (1) did the Parties enter an agreement to arbitrate; and (2) if so, does the dispute at issue fall within the scope of the arbitration agreement. *See, e.g.*, *National American Insurance Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004); *Williams v. Imhoff*, 203 F.3d 758, 764 (10th Cir. 2000).

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Riley Manufactoring Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998). Where the parties dispute whether an arbitration agreement exists, the party moving to compel arbitration bears a burden similar to what a movant for summary judgment faces. *Hancock v. Am. Tel. & Tel. Co., Inc.,* 701 F.3d 1248, 1261 (10th Cir. 2012). If the moving party carries this burden, the burden shifts to the non-moving party to show a genuine issue of material of fact

---

[3] The Parties also appear to agree that Colorado law governs the matter.

about the formation of the agreement to arbitrate. *Id.*

In addition, Section 3 of the FAA provides for a stay of this action pending the ultimate outcome of arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

## ANALYSIS

### I. The Arbitration Provision

"The Court must first determine the threshold question of whether the parties 'clearly and unmistakably' agreed to arbitrate." *Getzelman v. Trustwave Holdings, Inc.*, No. 13-CV-02987-CMA-KMT, 2014 WL 3809736, at *2 (D. Colo. Aug. 1, 2014) (citing *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998)). In seeking to compel arbitration, Armstrong Steel has the burden of providing sufficient evidence establishing that an enforceable arbitration agreement exists. *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1148 (D. Colo. 2012). Accordingly, in determining the existence and validity of an agreement to arbitrate, "[c]ourts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citation omitted); *accord Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006).

Armstrong Steel asserts that each of the renewed policies at issue in this matter contain an identical arbitration provision. [#10 at 2]. The provisions read: "Should we disagree as to

5

the rights and obligations owed by us under this Policy, including the effect of any applicable statutes or common law upon the contractual obligations otherwise owed, **either party may request that the dispute be subjected to binding arbitration**." [*Id.* (emphasis added); #10-2 at 9; #10-3 at 9]. According to Armstrong Steel, it served Plaintiff with an arbitration demand [#10-1] and, thus, this action is subject to binding arbitration. [#10 at 2].

In response, Plaintiff argues that the arbitration provision is inapplicable for two reasons. [#13]. First, because each renewed policy contains an endorsement for a Service of Suit provision that references only litigation, the arbitration provisions were necessarily amended and superseded by the Service of Suit provisions. [#13 at 6-7]. Second, Plaintiff argues that, even if the arbitration provisions are enforceable, they are inapplicable because they are permissive rather than mandatory. [*Id.* at 7-8]. According to Plaintiff, it had the option to either arbitrate *or* litigate its claim. [*Id.*]. For the following reasons, this court respectfully disagrees.

First, Plaintiff is correct that an endorsement attached to an insurance contract controls when it conflicts with the body of the insurance contract, as endorsements are the last expression of intent of the parties. *See Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 241 (Colo. 1992). However, this general rule is inapplicable when the body of the policy and endorsement were presented together in a "single package" of coverage, and did not appear separately negotiated or signed. *Id.* (holding that under such circumstances, the court construes conflicting provisions against the insurer). Such is the case here, as each policy contains the Service of Suit provision as an endorsement attached to the policy *at inception*, the Parties did not sign the endorsements, and there is no indication that the Parties negotiated the Service of Suit provisions. *See* [#10-2 at 1-2; #10-3 at 1-2]. Thus, the Service of Suit provisions do not supersede or amend the arbitration provision, and this court will construe any conflicts against James River. *Simon*, 842

6

P.2d at 241.

The Service of Suit provisions read: "It is agreed that in the event of the failure of this Company [James River] to pay any amount claimed to be due hereunder, this Company will submit to the jurisdiction of any court of competent jurisdiction within the United States of America[.]" *See generally* [#10-2 at 14]. While true that the Service of Suit provisions discuss only litigation, this court respectfully agrees with Armstrong Steel that these provisions do not conflict with the arbitration provision and are inapplicable to this matter. [#16 at 6]. This is because the Service of Suit provisions apply only to actions initiated by the insured against the insurer "in the event of the failure of [James River] to pay any amount claimed to be due hereunder[.]" [*Id.*; #10-2 at 14; #10-3 at 27]. Thus, a reasonable person would likely interpret this provision to apply only when an insured sues James River to recover benefits it unlawfully withholds. *See Power Eng'g Co. v. Royal Ins. Co. of Am.*, 105 F. Supp. 2d 1196, 1204 (D. Colo. 2000) ("[Courts] must construe the terms of the insurance contract as they would be understood by a person of ordinary intelligence, [], and avoid strained constructions of the language used, []." (internal citations omitted)).

The nature of this case is different from what the Service of Suit provisions contemplate. *See Blackhawk-Cent. City Sanitation Dist. v. Am. Guarantee & Liab. Ins. Co.*, 214 F.3d 1183, 1190 (10th Cir. 2000) (affirming the district court's conclusion that *Simon* is inapplicable when the endorsement and body of the policy are not in conflict). Here, James River seeks to affirmatively avoid any defense obligations by having the court void the insurance contracts as a whole based on Defendant's pre-suit misrepresentations, not to defend against a decision to deny a particular claim filed by Defendant. At best, there is a conflict within the insurance contract between the Service of Suit provisions and the arbitration provisions and, in such a circumstance,

7

this court must construe those conflicts against James River. *See Power Eng'g Co.*, 105 F. Supp. 2d at 1204. This rule of construction further supports a conclusion that the arbitration provision is enforceable. *See id.*; *see also Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 798 (10th Cir. 1995) ("However, to acknowledge the ambiguity is to resolve the issue, because all ambiguities must be resolved *in favor* of arbitrability." (emphasis in original)).[4]

Second, this court respectfully concludes that the arbitration provisions are not permissive as Plaintiff contends; rather, they are mandatory once either party makes a demand for arbitration. James River argues that, even if the arbitration provisions are enforceable, they are permissive because of the word "may." [#13 at 7-8]. However, "[a] common sense reading of the clause belies this contention. When either party elects to arbitrate and serves the proper notice, as was done here, then arbitration must ensue." *Block 175 Corp. v. Fairmont Hotel Mgmt. Co.*, 648 F. Supp. 450, 452 (D. Colo. 1986) (holding that the arbitration provision's use of the words "may . . . arbitrate" was not permissive because once proper notice was served, arbitration was mandatory, as the only other option for the aggrieved party was to abandon its claim). As other courts have held, to construe the arbitration provision's use of the word "may" to require both Parties' consent to arbitrate would render the arbitration provision meaningless.

---

[4] This conclusion is also consistent with the holding in *Lowry Assumption, LLC v. American International Specialty Lines Insurance Company*, No. 10-CV-02901-WDM-MJW, 2011 WL 1321952, at *4-5 (D. Colo. Apr. 5, 2011), wherein the court construed a conflict with the Service of Suit provision and arbitration provision in an insurance contract against the defendant-insurer who sought to compel arbitration. Though the court denied the defendant's motion to compel, it nonetheless resolved the internal conflicts against the insurer. *Simon*, 842 P.2d at 241. Additionally, this court finds *Lowry Assumption, LLC* inapposite, as the court in that case specifically found that the Service of Suit provision contemplating litigation, arbitration, or other forms of dispute resolution concerning the validity, formation, interpretation or operation of any term and specified that all proceedings would take place in Colorado subject to Colorado law, rendered the arbitration provision (covering all disputes under the policy) ambiguous. 2011 WL 1321952, at *2. Here, however, the Service of Suit provisions contemplate a very narrow occurrence that is not at issue in this case, nor does either dictate a forum for such suits, and does not appear to conflict with the arbitration provision.

*See, e.g.*, *Benihana of Tokyo, LLC v. Benihana Inc.*, 73 F. Supp. 3d 238, 249 (S.D.N.Y. 2014) (concluding that the word "may" renders arbitration mandatory once one party submits the dispute to arbitration; noting, "'may' does not, however, mean that if a party has elected to do so, the other may neutralize that choice by insisting on litigating in court."); *Smith v. AHS Oklahoma Heart, LLC*, No. 11-CV-691-TCK-FHM, 2012 WL 3156878, at *1 (N.D. Okla. June 6, 2012) ("To give effect to the option contained in this provision, if one party elects to proceed to arbitrate the dispute, then the other party must also submit to arbitration."); *In re Winstar Commc'ns, Inc.*, 335 B.R. 556, 563 (Bankr. D. Del. 2005) (collecting cases) ("By using the word 'may,' both parties were given the power to enforce the arbitration clause[.] . . . The word 'may,' therefore, cannot reasonably imply that either party had the option to avoid arbitration once that clause had been triggered." (internal citations omitted)).[5] Indeed, James River has itself promoted such an interpretation of an identical arbitration provision in an insurance contract with a different client. *See Daly v. Norfolk S. R. Co.*, No. CIV. 09-4609 WJM, 2011 WL 2559533, at *2-3 (D.N.J. June 27, 2011) (granting James River's motion to compel arbitration because the policy's language that "either party *may* make a written demand that the dispute be subjected to binding arbitration," required arbitration once either party has chosen arbitration); *see also* [*Daly v. Norfolk S. R. Co.*, No. CIV. 09-4609 WJM ECF. No. 36-2 at 2-3 (attached as Ex. A)]. Accordingly, this court respectfully concludes that the arbitration provision is enforceable

---

[5] *But see Waisanen v. Terracon Consultants, Inc.*, No. CIVA09CV01104MSKKMT, 2010 WL 545913, at *2 (D. Colo. Feb. 15, 2010) (concluding that the word "may" rendered the arbitration provision permissive). However, the issue in *Waisanen* was whether "Ms. Waisanen did, as a matter of fact, agree to be bound by [the alternative dispute] policy" contained in the defendant's handbook based on her understanding that she waived her right to judicial remedies, which is inapposite to the issue in this case.

against James River and mandatory in this matter given Armstrong Steel's written demand.[6]

## II. The Scope of the Arbitration Provision

Next, this court must determine whether Plaintiff's claim falls within the scope of the arbitration provision, and "[a]ll doubts [regarding the scope of the dispute] are to be resolved in favor of arbitrability." *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir. 1995) (quotations and citation omitted). This is true, "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Cherry Creek Card & Party Shop, Inc. v. Hallmark Mktg. Corp.*, 176 F. Supp. 2d 1091, 1095 (D. Colo. 2001) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–583 (1960)).

As discussed, the arbitration provision states, "[s]hould we disagree as to the rights and obligations owed by us under this Policy, including the effect of any applicable statutes or common law upon the contractual obligations otherwise owed, either party may request that the dispute be subjected to binding arbitration." *See generally* [#10-2 at 9]. This court concludes that this arbitration provision applies only to disputes concerning the Parties' respective rights under the renewed policies. *Cf. Desktop Images, Inc. v. Ames*, 929 F. Supp. 1339, 1345 (D. Colo. 1996) (concluding that the arbitration provision covering disputes arising under an agreement as narrow); *accord Galilea, LLC v. AGCS Marine Ins. Co.*, No. CV 15-84-BLG-SPW, 2016 WL 1328920, at *3 (D. Mont. Apr. 5, 2016) ("When an arbitration agreement covers "disputes 'arising under' the agreement, only those disputes relating to the interpretation and

---

[6] In addition, for the reasons discussed below, Plaintiff's challenge to the renewed policies as a whole does not invalidate the arbitration provision, and such a challenge is subject to resolution by the arbitrator. *See generally Getzelman*, 2014 WL 3809736, at *4-5 (concluding that the arbitrator, not the court, must resolve the plaintiff's claims of unconscionability directed to the agreement as a whole).

performance of the contract itself are arbitrable." (citations omitted)). "Under a narrow arbitration clause, a dispute is subject to arbitration only if it relates to an issue that is on its face within the purview of the clause, and collateral matters will generally be beyond its purview." *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1262 (10th Cir. 2005). Armstrong Steel avers that Plaintiff's Complaint (and, now, Amended Complaint) involves questions regarding its coverage obligations arising from the renewed policies. [#10 at 2]. Further, that Plaintiff's challenges to these renewed policies as a whole are within the purview of the arbitrator, not the court. [*Id.* at 3-4]. Plaintiff does not contest these arguments.

Here, the Amended Complaint seeks "a declaration of [Plaintiff's] right . . . to rescind or void policy numbers 00050092-4 and 00050092-5 based upon the false statements knowingly made by Armstrong on the renewal policy applications," and that it has no duty to defend or indemnify Armstrong Steel for any claim associated with these policies. [#28 at 8]. This court concludes that Plaintiff's Amended Complaint involves a dispute as to its rights and obligations under the renewed policies, *i.e.*, that James River has no obligations under the renewed policies because of Armstrong Steel's bad acts. Ultimately, this "relates to an issue that is on its face within the purview of the clause," and, the court must resolve any "doubts concerning the scope of the arbitrable issues in favor of arbitration." *Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1197 (10th Cir. 2009) (internal quotations and citations omitted); *accord Cherry Creek Card & Party Shop, Inc.*, 176 F. Supp. 2d at 1095 (noting that a claim falls outside the scope of an arbitration clause only if the court affirmatively concludes that "the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").

In addition, section 4 of the FAA "requires judicial resolution of issues that go to the making of an agreement for arbitration." *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003)

11

(internal quotations omitted) (citing *Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395, 403-04 (1967)).  Conversely, the arbitrator, not the court, must resolve challenges to an agreement as a whole, including agreements with arbitration provisions.  *See Prima Paint Corp.*, 388 U.S. at 403-04 (holding that the court may consider claims for fraudulent inducement as to the arbitration provision itself, not "claims of fraud in the inducement of the contract generally."); *accord In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1211 (10th Cir. 2016) (applying *Prima Paint Corp.* and compelling arbitration because the plaintiffs' "illusory" argument challenges the entire agreement, not just the arbitration provision).  Because James River seeks to void the renewed policies in their entirety on a theory of fraudulent misrepresentation or fraudulent inducement [#28 at 8], such a claim is for the arbitrator to resolve.  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (holding that the arbitrator, not the court, must resolve challenges to the contract as a whole).

## CONCLUSION

For the reasons stated herein, this court respectfully **RECOMMENDS** that:

(1) Defendant's Motion to Dismiss or in the Alternative Motion to Stay [#10] be **GRANTED**; and

(2) The case be stayed, and administratively closed pursuant to D.C.COLO.LCivR. 41.2, pending completion of arbitration pursuant to the arbitration provision within policy numbers 00050092-4 and 00050092-5. [7]

---

[7] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the

DATED: May 9, 2017					BY THE COURT:

					s/ Nina Y. Wang
					Nina Y. Wang
					United States Magistrate Judge

---

district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see*, *Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).